No. 2300
Second Circuit Appeal

---

SION T. BLYTHE v. J. H. ASKEW AND UNION INDEMNITY COMPANY

---

(June 23, 1925, Opinion and Decree)
(July 11, 1925, Rehearing Refused)
(October 6, 1925, Writ of Certiorari to Supreme Court Refused.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant —Par. 159, 159 (a).**
Where an injured employee sues under Section 8, Sub-section 1 (c) of the Workman's Compensation Act No. 20 of 1914, the difference between the wages at the time of the injury and the wages which he is able to earn thereafter, constitutes the basis for compensation, and not the opinion of physicians and surgeons as to the extent of his disability.

2. **Louisiana Digest—Master and Servant —Par. 160 (k).**
The maximum reasonable fee for an attorney to charge in a Workman's Compensation Case is one-third of the amount recovered; consequently a contract in which the attorney shall receive fifty per cent will be changed accordingly.

ON APPLICATION FOR REHEARING.

3. **Louisiana Digest—Master and Servant —Par. 159 (a).**
Section 8, Sub-section 1 (c) of the Workman's Compensation Act No. 20 of 1914, applies where there is partial disability to do work of any reasonable character. Therefore, where the injured employee's foot was crushed thereby caus-

ing him to be employed in ·farm work which pays lower wages Section 8, Subsection 1 (c) applies.

(The recent amendment of Section 8, of Act No. 20 of 1914, is Act 216 of 1924.)

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo, Hon. E. P. Mills, Judge.

This is a suit brought by ·an injured employee for compensation under the Employers' Liability Act No. 20 of 1914.

There was judgment for plaintiff for less than amount prayed. for and plaintiff appealed.

Judgment increased and affirmed.

Huey P. Long, of Shreveport, attorney for plaintiff, appellant.

Barnette & Roberts, of Shreveport, attorneys for defendant, appellee.

## STATEMENT OF THE CASE

REYNOLDS, J.   In this case Sion T. Blythe seeks judgment against J. H. Askew and Union Indemnity Company under the Workmen's Compensation Act for $18.00 per week for such period as his disability may last, not exceeding 300 weeks, on the ground that on July 7, 1923, he was working for defendant, J. H. Askew, in a hazardous employment at a weekly wage of $56.00, and that on that date he received an injury by having his foot crushed, thereby producing partial disability to do work of any reasonable character.

Defendant denied liability on the ground that it had paid plaintiff's medical bills to the amount of $199.00 and had paid him $403.71 which, he alleges, was all the compensation due plaintiff.

On these issues the case was tried and there was judgment in favor of plaintiff for compensation at the rate of $6.00 per week for 300 weeks, less the amounts previously paid him.   Plaintiff has appealed.

## OPINION

Under the evidence it is shown that the plaintiff, at the time of the injury complained of, was earning $56.00 per week, and at the time the suit was brought he was earning $1.50 a day.

The evidence shows that his foot was badly hurt and that the injury was still producing partial disability to do work of any reasonable character.

Plaintiff testified, page 3:

"Q.   What did you do from the day you got hurt until the day you filed this suit?
"A.   Well, I haven't done anything because Dr. Wolfe didn't never turn me a-loose finally until I come over here.
 * * * *
"Q.   Is the foot any better, is it showing any improvement or has it shown any improvement in the last two or three months?
"A.   Why it has improved some but then it is still sore in here.
                    (Page 4)
".(Witness indicating) I can walk on it a little but it is stiff and still hurts me and as far as my shoes, I have to get two numbers bigger than I used to get on account of them swelling.
"Q.   Can you do the heavy work you used to do, the oil field labor?
"A.   No, sir."

John Lee testified, page 9:

"Q.   Is he able to do heavy work?
"A.   No, sir; he wasn't doing any work because he wasn't able to do the heavy work and that is the reason he wanted to get on the farm, he told me."

Doctor M. L. Adair testified, page 9:

"Q.   Will you read that to the stenographer so that he can put it in the record?
"A.   The upper and lateral phase of the left foot show no fracture, orthritis pus on the first metatarsal bone, the arch is fallen, otherwise negative."

Doctor J. E. Slicer testified, page 11:

"Q.   And you estimated the disability to the foot as twenty-five per cent?

"A. Yes, sir; that was on December 20.

\* \* \* \*

"Q. Well, will you examine and say how much use he has of it now?

(Witness complying with request of counsel.)

"A. I still think he has twenty-five per cent disability.

(Page 13)

"Q. What causes it, could it be entirely the result of a heavy timber falling on the foot?

"A. Well, an injury like that could cause it."

The District Judge allowed plaintiff compensation at the rate of $6.00 per week during disability for not over 300 weeks.

We think his finding correct as to the number of weeks during which plaintiff is entitled to have compensation; but as to the amount of compensation he is entitled to during this period the Workmen's Compensation Act (Subsection c of Section 8) provides:

"For injury producing partial disability to do work of any reasonable character, sixty-five per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not, however, beyond three hundred weeks."

Hence the amount of compensation plaintiff is entitled to is $18.00 per week during his disability, not exceeding three hundred weeks.

Our learned brother of the District Court concluded that plaintiff's disability was only twenty-five per cent, as shown by the testimony of Dr. Slicer.

But our Supreme Court, in Sweeney vs. Black River Lumber Co., 150 La. 1061, said:

"The difference between the wages at the time of an injury and the wages which an injured employee is able to earn thereafter constituting the measure of compensation for partial disability under Act No. 20 of 1914, Section 8, Subsection 1 (b), should not be determined upon the opinions of physicians or surgeons as to the extent by which plaintiff's physical powers or functions have been reduced."

Under this authority the amount allowed plaintiff must be increased to $18.00 per week.

Plaintiff has attached to his petition the contract between himself and his attorney, under which it is provided that the attorney shall receive as his fee fifty per cent of the amount recovered in this suit.

In decisions of this court heretofore rendered we have held that one-third of the amount recovered in such a suit was the maximum fee allowable and we see no reason for departing from this rule in the present case.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be amended so as to read as follows: It is therefore ordered, adjudged and decreed that the plaintiff, Sion T. Blythe, do have and recover judgment against J. H. Askew and Union Indemnity Company in solido for compensation at the rate of $18.00 per week during disability for a period of not exceeding 300 weeks, the first weekly payment beginning July 14, 1923, with legal interest on each payment from the time it became due until paid, less credit for the sum of $403.71 paid March 26, 1924.

It is further ordered, adjudged and decreed that the contract between plaintiff and his attorney be approved to the extent of not exceeding one-third of the net amount recovered under this judgment.

Defendant to pay all costs of this suit.

## ON APPLICATION FOR REHEARING

### I.

CARVER, J. Defendant's able counsel urge that Subsection (e) of Section 8 of the Compensation Act should apply.

It seems clear to us that it cannot.

This subsection begins: "In cases not falling within any of the provisions already made," etc.

We think the case does fall within a previous provision of the statute.

### ·II.

Counsel also urge that as Doctor Slicer estimated the injury to plaintiff's foot at twenty-five per cent and as total loss of a foot is only sixty per cent of wages for 125 weeks, a construction which gives the plaintiff compensation for 300 weeks makes the statute absurd. They imply that compensation should be awarded on the basis of one-fourth the loss of a foot.

We find no warrant in the law for appraising the injury in this manner. The impairment of the foot is not the only thing to be considered. The pain suffered by the plaintiff is an element which cannot be ignored; nor can the fact be ignored that his earning capacity is reduced. If the injury as a whole partially disables plaintiff from doing work of a reasonable character it falls clearly within the express provision of Subsection (c) of Section 8, which provides:

"For injury producing partial disability to do work of any reasonable character sixty per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not however beyond 300 weeks."

In the case of small wage earners the weekly compensation under Subsection (d) is greater than under Subsection (c), Subsection (d) allowing 60 per cent of full wages, whereas Subsection (c) allows only 60 per cent of the amount of reduction in wages. In cases where partial disability is only temporary, compensation will not have to be paid for as long a time as under Subsection (d), which fixes the time at 125 weeks.

Subsection (d) applies, we think, to cases where the injury is confined to the loss of a member or part of a member. It does not apply to cases where the member is not only lost or impaired but there is also present some other feature increasing the injury as, for instance, pain, or the presence of a member of little or no use and hampering the injured person in his needful activities.

Where a member is amputated and the amputation is followed by good healing, leaving no other injurious effects than the mere loss of the member, we think the injury is not so great as where the member is left present but in a condition that hampers its possessor worse than if it were absent.

In Sweeney vs. Black River Lumber Company, 150 La. 1062, 91 South. 511, the Supreme Court held that the measure of compensation for partial disability under the Workman's Compensation Law should not be determined upon the opinions of physicians or surgeons as to the extent by which the injured party's physical powers or functions had been reduced but by the difference between the wages at the time of the injury and the wages which the injured employee was able to earn thereafter.

In that case the lower court awarded $11.00 a week, being 55 per cent of $20.00 a week, upon the basis of the testimony of physicians that plaintiff's injury had reduced his physical powers or functions one-third. His wages at the time of the injury being $60.00 a week. The court held this method of arriving at the compensation erroneous and increased it to $16.00 a week, based on reduction of earning capacity.

In Dennis vs. Huber, 151 La. 589, 92 South. 126, where the plaintiff had received

an injury to his hand and wrist which incapacitated him for heavy work but left him able to perform the duties of a watchman and do other light work, the Supreme Court held that the injury produced partial disability entitling plaintiff to compensation under Subsection (c) of Section 8.

### III.

Counsel also argue that the court should not apply Subsection (c) because plaintiff did not show inability to do any kind of work except heavy oil field labor and was farming at the time of the trial, which, they say, shows that he could do farm labor.

The plaintiff does not say that he can do all kinds of farm labor, and we are satisfied he cannot. We do not think it was incumbent on plaintiff to take up the whole category of occupations and testify that he could not do the work of any or all of those occupations. It needs no witness to satisfy us that a man with the arch of his foot fallen, a joint of it inflamed and the foot subject to painful swelling, is partially disabled to do work of almost any character.

The plaintiff was an uneducated man, having gone to school only through the fourth grade and is not fitted by training for any but manual labor.

We cannot conceive of any kind of manual labor for which the condition of his foot does not render him less able than if his foot were in good condition. This is what we understand to be partial disability. If he were rendered wholly unable to work this would not be partial disability but total disability, entitling him to compensation under Subsections (a) or (b), according as the disability was temporary or permanent.

### IV.

Counsel also argue that it is not partial disability to do heavy work for which compensation is allowable under the statute but only for partial disability to do work of any reasonable character, arguing then that farm work. They conclude the plaintiff has not brought himself under Subsection (c).

As pointed out above, the Supreme Court decided in the Dennis case that a plaintiff who could, before the injury, do heavy work, but afterwards could only do light work was partially disabled.

The plaintiff in this case was earning $56.00 a week and is engaged now in farm work, some of which he can do and some of which we are satisfied the condition of his foot will not permit him to do, which work, the evidence shows, is valued at $1.50 a day or, say, $9 a week of six days. This would be a reduction of $47.00 a week. If, though, he could make as much as $26.00 a week, the reduction in his earning capacity would be $30.00 a week, 60 per cent of which would be $18.00 a week, the amount allowed by our judgment. We are satisfied that he cannot earn more than $26.00 a week with his foot in the condition it was at the time of the trial.

Rehearing refused.