### HOLMES v. ARMOUR & CO.

#### No. 5991.

Court of Appeal of Louisiana.
Second Circuit.

June 28, 1939.

Julius T. Long, of Shreveport, for plaintiff.

E. W. & P. N. Browne, of Shreveport, for defendant.

DREW, Judge.

This is a suit under the Workman's Compensation Law of this state.

For a cause of action, plaintiff alleged as follows:

"That on or about July 31, 1937, in the City of Shreveport and Parish of Caddo, Louisiana, while petitioner was in the employ of and working for the said defendant, Armour & Company, in his said employment at a wage of Fifteen Dollars per week, being paid under his contract of employment by the week, he was at work in unloading a box car of sweet pickles at or near the place of business of said defendant, near 1100 Commerce Street of said city, and was pushing and moving a pickle buggy used therein, when the right front wheel of said buggy struck that part of said car on right of the door going in, probably called the facing of the said car door, causing the left handle of said buggy to strike the left leg of petitioner at a point in and near his knee, thereby seriously and permanently injuring and impairing the cartilage, ligaments, muscles, nerves and tissues in and about his said knee and upper and lower part of said leg, totally and permanently disabling him to do work of any reasonable kind.

"That soon after he was thus injured, the said defendant knew of the cause, nature and extent of his injuries and had him treated by physicians selected by it for several weeks, and paid him a weekly compensation of Nine and 75/100 Dollars for

four and one-half weeks, and since then failed and refused to pay him any more.

"That through the urgent request of the said defendant and its hired physicians he went back and tried to work for the defendant along in the Fall of the year 1937, and did light work for it in pain until it discharged him on pretext of reducing its force or having nothing for him to do, on or about January 20, 1938.

"That he sustained his said injuries in performing services arising out of and incidental to his said employment in the course of the business of the said defendant in owning and operating a meat packing plant, warehouses, engines, machinery, elevators, motor vehicles, sausage factory, etc."

He prayed for judgment of sixty-five per cent of his weekly wages for a period of not more than four hundred weeks.

Defendant denied all the material allegations of plaintiff's testimony, and further answering, alleged that plaintiff had long since recovered from any injuries he might have received while in the employ of it, and any consequent disability has likewise since ceased to exist.

The lower court found the plaintiff was partially disabled for performing work of any reasonable character, and awarded judgment for the minimum amount of $3 per week, for a period not to exceed three hundred weeks, less certain payments heretofore made by defendant.

Both plaintiff and defendant have perfected appeals to this court.

Plaintiff is thirty-three years of age and had been in the employ of defendant since 1933. On July 31, 1937, while in the employ of defendant and acting within the course and scope of his employment, he was injured in an accident. He was pushing a sweet pickle buggy from the warehouse to a box car. The buggy was empty and he was going into the car to load it. The wheel of the buggy hit the door of the box car, causing the handle of the buggy to swing around and strike plaintiff on the inside of the left knee. Another employee took charge of the buggy, pushed it into the car, and loaded it. Plaintiff sat down during this time, due to the pain in his knee.

After the buggy was loaded and pushed out of the car, plaintiff again took it to the elevator and carried it downstairs. His leg began hurting and he was forced to stop and rest. It was not long until quitting time, and he finished out the day, although in pain. When he did cease working that day, his leg was swollen and he could hardly walk on it. His knee became stiff and he could not bend it. The next morning he was unable to return to work and called the shipping clerk, his foreman. He, in turn, called the doctor and sent plaintiff to him, who treated him until about August 27th and ordered him to return to work. Plaintiff went to the manager and informed him he was not able to resume work. He was sent back to the doctor, who treated him for another week, discharged him, and ordered him to return to work, with instructions that he be given light work, which was done. After several weeks he was again given heavy work, of which he complained. On January 23, 1938, he was discharged for reasons which are unimportant here.

Plaintiff complains that his leg hurts him whenever he stands on it or uses it for a reasonable length of time; that it gets weak and feels as though it will give way under him. He walks with a slight limp, using a stick most of the time, and the left shoe clearly shows that he drags the left leg and foot when walking.

Defendant paid him compensation for four and one-half weeks, at the rate of sixty-five per cent of his weekly wage, or $9.75 per week.

We are much impressed with the fair and impartial manner in which the medical men testified in this case, and are convinced that they made a sincere effort to correctly present to the court the true condition of plaintiff's leg at the time of their examination.

The X-ray of the leg on March 3, 1938, showed a large area of calcification at the upper lateral margin of the inner condyle of the femur, and another calcified area along the shaft of the femur on the inner border, about three inches above the condyle. The femur is the thigh bone and the inner condyle is the large part of the lower end of that bone—the inner side of the thigh bone, just above the knee joint, about an inch above the knee joint proper.

This condition will cause pain when using the leg and is partially disabling for performing manual labor. The chance for complete recovery is slight. We are convinced that a judgment for partial dis-

ability is correct. That he is not totally disabled is made clear by the fact that he did perform light work for defendant for several months after the date of injury.

During the four and one-half weeks he was paid compensation by defendant, he was totally disabled and was entitled to the amount paid. For the weeks which he worked and was paid a salary, he is not entitled to compensation. It is difficult from the record as made up, to determine exactly how many weeks he did work. We will do the best possible under the circumstances. He went back to work, according to his testimony, about September 2nd or 3rd and worked until January 23rd, a period of twenty and one-half weeks, for which time he was paid.

The disability plaintiff is suffering does not exceed thirty per cent and the lower court was correct in allowing him the minimum amount under the act of $3.00 per week, for a period not to exceed three hundred weeks, beginning July 31, 1937, less the number of weeks (not amount) he was paid compensation, and number of weeks he worked, for which he was paid, totaling twenty-five weeks, with legal interest on each weekly payment from due date until paid. The judgment of the lower court is, therefore, amended and clarified and in all other respects, the judgment is affirmed with costs.